Exhibit 1

Fulton County Superior Court
**EFILED***LW
Date 8/6/2025 4:39 PM
Ché Alexander, Clerk



# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM J2 C-103, ATLANTA, GEORGIA 30303
## SUMMONS

REGINALD  MASON

**Plaintiff,**

**vs.**

THE HOUSING AUTHORITY  of the

CITY of ATLANTA, a Georgia Nonprofit Corporation;

**Defendant**

[See Attached Addendum for  Additional Defendants]

) **Case**
) **No.:** _____ 25CV010819 _____
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at https://efilega.tylertech.cloud/OfsEfsp/ui/landing (unless you are exempt from filing electronically) and serve upon plaintiff's attorney, whose name and address is:

Self Represented: Reginald  Mason 6901 E. 11th Street Long Beach, CA 90815; Giantkiller10x@gmail.com

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed within five (5) business days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This_____ 8/6/2025 _____day of_____, 20 _____

Honorable Ché Alexander, Clerk of

Superior Court

By_____
                    Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you   _____, 20_____

Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

**Addendum to Summons [Additional Parties are Defendants]**

TERRI M. LEE, in her official

Capacity as President & CEO; MAYRA CALHOUN,

in her individual and official capacity as Senior

Vice President of Human Resources;

KIWANA JOHNSTON, in her individual and

official capacity as Manager of Employee

Relations; and DOES 1 throug10, inclusive;

Defendants.

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

| | | |
|---|---|---|
| REGINALD MASON | ) | |
| | ) | CIVIL ACTION NO:    25CV010819 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Jury Trial Demanded |
| | ) | |
| THE HOUSING AUTHORITY of | ) | |
| the CITY of ATLANTA, a Georgia Nonprofit | ) | |
| Corporation; TERRI M. LEE, in her official | ) | |
| Capacity as President & CEO; MAYRA | ) | |
| CALHOUN, | ) | |
| in her individual and official capacity as Senior | ) | |
| Vice President of Human Resources; | ) | |
| KIWANA JOHNSTON, in her individual and | ) | |
| official capacity as Manager of Employee | ) | |
| Relations; and DOES 1 through10, inclusive; | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

<u>COMPLAINT FOR DAMAGES</u>

**INTRODCUTION**

1.  Comes now Reginald Mason ("Plaintiff") for himself and no other person to complain of

the conduct of the Defendants named herein, and each of them, for damages sustained by

Plaintiff in connection with his claims set forth herein for: (1) Wrongful Termination-Retaliation

in Violation of Title VII of the Civil Rights Act of 1964, (2) Wrongful Termination in Violation

of Public Policy, (3) Intentional Infliction of Emotional, Distress, (4) Fraud, and (5) Tortious

Breach of Employment Contract.

1

**JURISDICTION**

2.   Jurisdiction is proper as this Court has general, and broad jurisdiction over all legal and equitable claims set forth herein, including supplemental jurisdiction of federal claims wherein state law claims predominate, and or are closely intertwined among the same facts and circumstances upon which federal claims are based.

**VENUE**

3.   Venue is proper in this Court because Fulton County is the county of residence of at least one of the defendants in this lawsuit, and the primary office of The Housing Authority of The City of Atlanta is located in Fulton County. Venue is also proper in Fulton County because a substantial part of the events or omissions giving rise to the claims asserted in the Complaint occurred in Fulton County. Defendants' principal office address is 230 John Wesley Dobbs Ave. NE Atlanta, Georgia 30303.

**PARTIES**

4.   PLAINITFF REGINALD MASON ("Plaintiff" or "Mason") was at all times mentioned herein an employee of Defendant The Housing Authority of the City of Atlanta; and at all times mentioned herein resided in Fulton County, Georgia. Plaintiff filed timely charges with Employment Opportunity Commission ("EEOC") office in Atlanta on or about October 2024, and has received a Notice of Right to Sue on May 8, 2025, within 90 days from the date of filing this Complaint.

5.   DEFENDANT THE HOUSING AUTHORITY of the CITY of ATLANTA ("AHA"), is and was at all times mentioned herein non-profit corporation doing business and operating in Fulton County, Georgia.

6. DEFENDANT TERRI M. LEE ("Terri"), named herein in her official capacity only, is and was an executive officer on behalf of AHA, and is currently serving as AHA's President and CEO. Based on information and belief, Terri is a resident of Fulton County, Georgia.

7. DEFENDANT MAYRA CALHOUN ("Mayra"), named herein in both her individual capacity and official as AHA's Senior Vice President of Human Resources, is and was at all times mentioned herein acting as an officer on behalf of AHA. Based on information and belief Mayra is a resident of Fulton County, Georgia.

8. DEFENDANT KIWANA JOHNSTON ("Kiwana"), named herein in both her individual capacity and official capacity as AHA's Manager of Employee Relations, is and was at all times mentioned herein acting as a manager on behalf of AHA. Based on information and belief Kiwana is a resident of Fulton County, Georgia.

9. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

10. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, employee, partner, joint venturer, co-conspirator, owner, principal, or employer of the remaining Defendants, and was at all times acting in concert with each other concerning the conduct complained of herein, and were each acting within the course and scope of that agency, employment, partnership, ownership, or other relationship, and that the acts and conduct herein alleged of each of the Defendants were known to, authorized by, and

ratified by the other Defendants.

## FACTUAL ALLEGATIONS

11. In March of 2023 Mason was recruited by AHA to come work for it performing capital Markets activities and duties. On April 10, 2023 Mason officially started working for AHA. However, prior to Mason being hired he was told that he would initially work as both a Senior Underwriter and on capital markets activities because the Manager of Capital Markets position had not yet been fully created. Mason was responsibilities included, but were not limited to conducting detailed financial analyses, managing real estate transactions, getting AHA bond rated by Standard & Poor's, and establishing co-investment relationships with developers, and other sources of capital.

12. On or about January 6, 2024 after having worked nine (9) months performing both underwriting and capital markets work, AHA's President, Terri Lee approved Mason's Manager of Capital Markets position. However, although Mason's new official title and position was that of Manager of Capital Markets, he was still required to perform Senior Underwriter duties, reporting to both Tricia Manning (Director of Underwriting), and Michael Wilson- SVP of Transactions Management and Capital Markets[1].

13. On or about February 2, 2024 Mason received from AHA's human resources department a salary offer of $92,000.00 in connection with the Manager of Capital Markets position. However, Mason was not satisfied with that offer and counter stating that the low-end of the market for the position was at least $103,000.00. Accordingly, subsequent to discussions with

---

[1] Normally, and in the past the capital markets person worked in the office of finance under the CFO. However, Mr. Mason was left in the Underwriting Unit to continue to wok as both a Senior Underwriter and Capital Markets Manager.

Mayra, Mason and Mayra[2] came to an agreement that he would accept the $92,000.00 with the understanding that were Mason to successfully get AHA bond rated prior to AHA's fiscal year end[3], Mayra would cause Mason to be paid the difference between the $103,000 and $92,000.00 after fiscal year-end, and adjust his salary to $103,000.00 going forward.

14. Prior to Mason's employment, AHA had never successfully submitted or completed becoming agency rated by any major rating agency, such as Standard & Poor's, Fitch or Moody's. Thus, on or about September 26, 2023 while on a conference call with Dejernette Beaty, Terri Lee (at that time still AHA's COO), and Michael Wilson; Mason, in response to a question from Terri, stated that he was confident that AHA could become agency rated by Standard & Poor's. Accordingly, at Terri's instructions, Michael Wilson and Mason were assigned the responsibility of getting AHA rated by Standard & Poor's, with Mason being the lead.

15. AHA's urgent need for Mason to take on the role and responsibilities as the Manager of Capital Markets stemmed from (1) An AHA 2023 commissioned ULI assessment and report indicating that AHA had an infrastructure funding gap of $1M/acre of land that AHA owned, and that AHA needed to look for co-investment, public-private partnerships as a possible funding source to both fund AHA's infrastructure gap, and/or co-invest with AHA, *pari passu*, in affordable housing developments and acquisitions not involving AHA land.  At that time AH

---

[2] During the discussion with Mayra she acknowledged that she had been hearing about the great work Mason was doing in connection with getting AHA bond rated, as well as that Mason was responsible for getting global faith leader TD Jakes, and his entities TD Jakes Real Estate Ventures and TD Jakes Foundation to the table to become potential co-investors and partners with AHA.
[3] AHA's fiscal year-end in 2024 was June 30th, and had been on June 30th of every year.

owned 300 Acres of land that needed to be developed, and thus had an infrastructure funding gap of $300M; and (2) for at least 2 years prior to Mason being hired, AHA had tried to become bond rated so that it could issue bonds as a source of capital to address its $300M infrastructure funding gap, and as a means to provide low-cost conduit, bond debt as a means of increasing housing affordability.

16. On April 1, 2024 AHA for the first time in its 85-year history, became a rated agency, with an A+ rating issued by Standard & Poor's. Preliminarily, AHA could issue up to $330M in debt as an additional source of capital by which to fund and develop affordable housing projects.

17. Despite this milestone for AHA, Mason became more concerned in late June of 2024 that AHA leadership had not reported the rating to HUD, nor had AHA's leadership reported in the 2024-2025 Annual Budget/Financial Report, the bond rating as an expense item with respect to, (a) the cost incurred by AHA in obtaining the bond rating, and (b) the future cost of maintaining the bond rating.   Instead of making these disclosures to HUD, AHA's leadership disguised the bond expenses as attorneys' fees, whereby AHA's leadership engaged one of the law firms it regularly did business with to pay Standard & Poor's, then reimbursed said law firm as though the payments were legal fees, and thereby facilitated AHA's leadership cover up from reporting this material information to HUD.

18.  On June 24, 2024 Mason was part of a team of presenters that gave a presentation to AHA's new, Chief Real Estate Officer, Mr. Alan Ferguson, regarding recommending the selection

of a developer for the North Ave. project.  During the presentation Mr. Ferguson sat next to Mason as Mason shared notes and documents with Mr. Ferguson. After the presentation Mr. Ferguson pulled Mason to the side and stated that "You and I need to talk later about how to bring in co-investment partners to match the $130M dollars AHA needs to put out."  Mason responded stating "No problem. I have about $300M already lined up out of a pool of about $3B. By the way, I brought the TD Jakes teams to the table."  Mr. Ferguson then responded "Ok, make sure that they [the $300M pool of co-investors] are not looking for IRRs in the 30s." Mr. Ferguson then told Mason to follow up with his executive assistant, Ife Jacobs, to get on Mr. Ferguson's calendar regarding the same.

19. On July 1, 2024 consistent with Mason's capital markets role, and the June 26, 2024 request by Mr. Ferguson to bring in co-investment partners, Mason arranged a meeting on July 3, 2024 wherein developer Gragg Cardona Soudi ("Gragg"), Mr. Ferguson and Mason would meet to discuss a co-investment opportunity.

20. On July 3, 2024 Mr. Ferguson, and Mason met with the Gragg team.  The meeting concerned the co-acquisition by AH and Gragg of an affordable-housing apartment building known as Peaks at MLK. During the meeting, amongst other things, Mr. Ferguson reiterated AHA's need to arrange co-investment public-private relationships with new developers and investors to partner up with AHA to co-invest along-side the $130M in funds that AHA needed to put out.  At the conclusion of the meeting, Mr. Ferguson stated that he liked the deal and that he

wanted AHA to take at least 50% of the deal. Accordingly, Mr. Ferguson instructed Mason to prepare a deal memo, proposing a joint-venture deal structure between AHA and Gragg, and to copy Fenice Taylor, AHA's Chief Financial Officer.

21.  On July 16, 2024 Mason completed the Peaks at MLK joint-venture deal memo, and emailed it to both Mr. Ferguson and Fenice Taylor.

22. On July 17, 2024 underwent an outpatient medical procedure. Prior to the procedure Mason had submitted, and had been approved to use two (2) of his PTO days. After Mason completed his medical procedure, he received an email from Mr. Ferguson instructing him to forward copies of the documents, the proposed joint-venture deal memo, and other materials from the July 3, 2024 meeting with Gragg, to Robin McCrary, so that the co-investment review process regarding Peaks at MLK could be begin. However, Mr. Mason was not able to respond to Mr. Ferguson's email, nor forward the requested documents to Robin McCrary, as AHA had locked Mason out the building, and had shut down all of his AHA communication channels because Mr. Mason had not disclosed his medical condition[4] via filing an FMLA claim.

23. Mr. Mason called Robin McCrary using his personal cell phone and notified her of the documents that Mr. Ferguson wanted her to have, but that he was not able to forward the documents to her because he had been locked out of the system as a result of AHA's FMLA policy.

---

[4] This was a common practice by AHA as a means by which to force employees disclose their medical conditions and information by requiring completion of FMLA claims against their will. There are at least four other employees that this was done to.

As such, Mason asked Robin to contact Mr. Ferguson directly to get the documents and memo from Mr. Ferguson, and to explain to Mr. Ferguson that he [Mr. Mason] was locked-out of the system. Robin agreed and indicated that AHA had previously locked out of the system, two employees she had supervised as a result of AHA's FMLA policy.

24. Between July 17 and July 19, a series of emails went back and forth between Mason[5] and AHA's HR Department wherein Mason refused to disclose his medical condition and rebuffed AHA's recalcitrant demand that Mason and his doctor file, an otherwise false FMLA claim, so that they could discover his medical condition. Despite Mr. Mason's repeated statement that he was not seeking FMLA leave, AHA remained steadfast in its position that Mason would not be provided access to the building, work files, emails or cell phone until he filed an FMLA claim, and that per Kiwana, not filing a claim "is not an option, and is required per AHA's policy." In response to Kiwana's emailed statement, Mason requested that Kiwana provide him with a copy of the AHA policy she referenced. No such policy was ever provided to Mason.

25. Unable to resolve his dispute with HR concerning AHA's unlawful policy, procedure and violation of law, and therefore consistent with section 6.5 of the employee handbook that Mason was provided when he was hired, Mason reported HR's conduct and practice to AHA's General Counsel, Lisa Washington via email. Copied on the email were Mr. Ferguson, Mayra Calhoun- Senior Vice President of HR, and other AHA senior leadership.

---

[5] Mr. Mason was communicating with AH through his personal email, as his AH email and cell phone were blocked from usage.

9

26. In pertinent part, the employee handbook that was provided Mason at the time he was hired by AHA, provides that:

"…… any employee ….. with a good faith belief that a suspected violation of law or policy has occurred, is **required** to report a suspected violation of law or AHA policy to the General Counsel and the Director of Human Resources." (emphasis added)

*-AHA Employee Handbook, Effective: 7.1.2017, Section 6.5, Pp 60-61.*

"Reporting individuals are encouraged to make such reports to the individuals listed above **prior to making a report to any outside body**…" (emphasis added)

*-AHA Employee Handbook, Effective: 7.1.2017, Section 6.5, Pp 60-61.*

"Reports of suspected violations of law or policy… **will be investigated promptly**… The Reporting individual **shall be informed that an investigation is being undertaken and when such investigation is concluded**…" (emphasis added)

*-AHA Employee Handbook, Effective: 7.1.2017, Section 6.5, Pp 60-61.*

27. On July 22, 2024 Mason was provided access to the building, his work email and phone.

28. At no time after filing his complaint/report with AHA's General Counsel's office, even as of the date of this response, was Mason ever informed by AHA that an investigation regarding his complaint concerning AHA's FMLA policies, procedures and practice was underway, nor has Mason, even as of the date of this response, been informed that an investigation regarding his complaint concerning AHA's FMLA policies, procedures and practice has been concluded.

29. On or about July 23, 2024 Mason contacted Ife Jacobs via email, Mr. Ferguson was copied on the email, regarding getting on Mr. Ferguson's calendar to go over the co-investment strategy roll out for capital markets, and to discuss potential advisory services of Celeres Capital,

as headed by Frank Turner. Ife Jacobs confirmed a date of August 29, 2024.

30. On July 23, 2024 after completing some work at the office, Mason attended a mandatory

employee town-hall meeting.  At the town-hall meeting Terri announced that AHA's board had

approved the largest annual budget in AHA's history. Terri went on to talk about various

items and requested that the real estate transaction department remain behind because she wanted

to speak with us about the growth of the agency, and went on further to state that there was a male

employee that had applied for a job/position that had not been yet created, but that the issue had

been resolved. After Terri spoke to our department and dismissed us, Terri and Mr. Ferguson

remained in front of the stage where Terri had been speaking from.  Mason walked down to where

both of them were seated and jokingly committed to Terri that it sounded like getting Mr. Ferguson

to join AHA was like the story of Jona in the bible, and then he asked if there was ever going to

be an announcement of AHA's bond rating. She gave no respond but with an eerie look chuckled.

Terri then turned away, and started back speaking with Mr. Ferguson.  Sensing he had struck a bad

nerve, Mason walked away.

31. On July 25, 2024 Mason left Atlanta for a pre-planned and approved vacation.

32. On August 13, 2024 while on vacation Mason received an email from Mayra Calhoun

instructing him to meet her at her office on August 15, 2024.

33. On August 14, 2024 Mason arrived back in Atlanta from being on vacation.

34. On August 15, 2025 Mason arrived at the meeting as requested by Mayra. Mayra came in

and introduced herself, then excused herself stating that someone else was going to be joining the two of them. About 2 minutes later Mayra and Mr. Ferguson walked into the room. Marya then informed Mr. Mason that he was being terminated, effectively immediately, that AHA was "heading in another direction."[6]

## FIRST CLAIM FOR RELIEF

### Wrongful Termination-Retaliation in Violation of Title VII of the Civil Rights Act. (Against All Defendants)

35. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-34 as though fully set forth herein.

36. Defendant AHA through its officers, employees and other Defendants named herein, wrongfully terminated Plaintiff from his employment at AHA. Said wrongful termination was in retaliation to Plaintiff having engaged in protected activity that included, but not limited to refusing to disclose his medical condition, refusing to file a false FMLA claim at AHA's insistence, reporting violations of law and policy to AHA's general counsel as required by the employee hand-book Plaintiff was given, and for having inquired about AHA's bond rating status out of concern that the same had not been reported to HUD.

37. Said wrongful termination was a direct and proximate result of Defendants' and each of

---

[6] Despite Mr. Mason having at least one year of employment seniority over two of the Senior Underwriters in the underwriting department in which he continued to work, he was not offered to remain employed at least as a Senior Underwriter despite still being assigned to and working on several transaction as a Senior underwriter at the time he was terminated.

12

their conduct. As a direct and proximate result of Plaintiff being wrongfully termination, Plaintiff has suffered and continues to suffer lost past and future compensation, lost insurance and benefits, expense in seeking other suitable employment and severe emotional distress.

38. Defendants' conduct was done with malice, and with reckless indifference towards Plaintiff's protected federal rights, justifying an award of both treble and punitive damages.

## SECOND CLAIM FOR RELIEF

### Wrongful Termination-Retaliation in Violation of Public Policy.
### (Against All Defendants)

39. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-38 as though fully set forth herein.

40. Defendant AHA through its officers, employees and other Defendants named herein, wrongfully terminated Plaintiff from his employment at AHA. Said wrongful termination was in violation of public policy in retaliation for Plaintiff having engaged in protected activity that included, but not limited to refusing to disclose his medical condition, refusing to file a false FMLA claim at AHA's insistence, reporting violations of law and policy to AHA's general counsel as required by the employee hand-book Plaintiff was given, and for having inquired about the announcement of AHA's bond rating status out of concern that the same had not been reported to HUD.

41. Said wrongful termination was a direct and proximate result of Defendants' and each of their conduct. As a direct and proximate result of Plaintiff being wrongfully termination, Plaintiff

has suffered and continues to suffer lost past and future compensation, lost insurance and benefits,

expense in seeking other suitable employment and severe emotional distress.

42. Defendants' conduct was done with malice, and with reckless indifference towards

Plaintiff's protected federal rights, justifying an award of both treble and punitive damages.

### THIRD CLAIM FOR RELIEF

**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

43. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-42 as

though fully set forth herein.

44. Defendants and each of them in directly and proximately causing Plaintiff to be wrongfully

Terminated from his employment at AHA, acted wantonly, recklessly and with indifference

for the severe emotional distress that their conduct would cause Plaintiff.  As direct and proximate

cause of Defendants' and each of their conduct, Plaintiff has suffered and continues to suffer severe

emotional distress.

45. Defendants' conduct was carried out with malice-aforethought with the intent to cause

Plaintiff severe emotional damage, and therefore justifies awarding Plaintiff treble and punitive

damages.

### FOURTH CLAIM FOR RELIEF

**Fraud**
**(Against AHA and Mayra)**

14

46. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1- 45 as though fully set forth herein.

47. Defendant AHA through its employee Mayra defrauded Plaintiff out of pay and labor in that Mayra promised Plaintiff that she would cause him to be paid the difference between the $103,000 salary he requested and the $92,000 salary he was offered to perform the job duties and responsibilities of Manager of Capital Markets, were he to successfully get AHA bond rated by Standard and Poor's by fiscal year-end. Plaintiff reasonably believed Mayra given the she was AHA's Senior Vice President of Human Resources, whom hired employees and approved pay. In reliance on Mayra' representation Plaintiff accepted the $92,000.00 salary believing that he would be paid the difference as promised if he got AHA bond rated.

48. On April 1, 2024 Plaintiff successfully caused AHA to be bond rated having received an A+ rating from Standard and Poor's.

49. On June 30, 2024 AHA's fiscal year ended.  In or about July 2024 AHA's Board approved the largest annual budget in AHA's history, including approving an outsized salary for Mr. Ferguson in the amount of $443,000. Mr. Ferguson has since left AHA.

50. On August 15, 2024 at the termination of Plaintiff's employment Mayra accompanied Plaintiff upstairs to his desk so he could get his personal things. As Mayra and Plaintiff walked to the elevator he asked about when would the $11,000 difference in pay that he had earned be paid. In response Mayra, stated that she had not yet completed her review of the performance reports

submitted by supervisors over Plaintiff's department.

51. Plaintiff on numerous occasions requested that AHA pay him the difference in pay he had earned. As of the day of this complaint said payment has not been made.

52. But for Mayra's false promises, which Plaintiff did not know was false at the time, Plaintiff would not have accepted the salary of $92,000.00

53. As direct and proximate result of Mayra's false promise Plaintiff has been damaged in an amount to be proven at trial.

54. Mayra's conduct was malicious and calculated to defraud Plaintiff out of his labor and pay, warranting an award of treble and punitive damages.

**FIFTH CLAIM FOR RELIEF**

**Tortious Breach of Employment Contract**
**(Against AHA and Mayra)**

55. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1-54 as though fully set forth herein.

56. In or about February 2, 2024 Plaintiff and AHA through defendant Mayra, entered into an employment contract to be paid the difference between the $92,000 salary AHA offered and the $103,000.00 salary Plaintiff was requesting, if Plaintiff successfully completed getting AHA bond rated by Standard and Poor's by fiscal year end.

57. Plaintiff performed the terms of the employment contract as requested and on several occasions made several demands upon AHA to perform its obligation, but it has not and continues

16

to refuse to perform its obligation despite its performance not having been excused.

58. As a direct and proximate result of AHA's intentional and tortious breach via defendant

Maya, Plaintiff has been damaged in an amount to be proven at trial.

59. Said breach by AHA of the employment contract was knowingly intentional and malicious,

justifying an award of treble and punitive damages.

## PRAYER FOR RELIEF

On the basis of all of the foregoing, Plaintiff prays for relief as follows:

A. Jury Trial;
B. As to all Claims, where applicable, compensatory, consequential, treble, and punitive damages;
C. As to all Claims attorney's Fees, and any other relief the Court may deem just and proper;

and

D. Award of costs of suit.

Respectfully submitted this 5th day of August, 2025

Reginald Mason, Self Represented
6901 E. 11th Street
Long Beach, CA 90815
Giantkiller10x@gmail.com

Fulton County Superior Court
***EFILED***IF
Date: 10/21/2025 3:40PM
Che Alexander, Clerk

**SHERIFF'S ENTRY OF SERVICE** 

## SHERIFF'S ENTRY OF SERVICE

Civil Action No. 25CV010819

Date Filed August 6, 2025

| | | |
|---|---|---|
| Superior Court | ☑ | Magistrate Court ☐ |
| State Court | ☐ | Probate Court ☐ |
| Juvenile Court | ☐ | |

Georgia, _____ Fulton _____ COUNTY

Attorney's Address

Lisa Washington, ESQ.
230 John Wesley Dobbs Ave NE
Atlanta, GA 30303

Reginald Mason
_____

Plaintiff

VS.

Name and Address of Party to be Served.

The Housing Authority of The City
of Atlanta
230 John Wesley Dobbs Ave NE
Atlanta, GA 30303

The Housing Authority of The
City of Atlanta et.al.
_____

Defendant

_____

Garnishee

## SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant_____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant_____by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____described as follows: age, about _____years; weight _____ pounds; height, about_____ feet and_____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐ Served the defendant The Housing Authority of the City of Atlanta a corporation by leaving a copy of the within action and summons with Heather Antrum Kennedy General in charge of the office and place of doing business of said Corporation in the County. Counsel.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s).to answer said summons at the place stated in the summons.

**NON EST** Diligent search made and defendant not to be found in the jurisdiction of this court.

This 21st day of October, 20 25.

_____ S. _____ # ___
DEPUTY

Fulton County Superior Court
***EFILED***IF
Date: 10/21/2025 3:44 PM
Che Alexander, Clerk

**SHERIFF'S ENTRY OF SERVICE**

## SHERIFF'S ENTRY OF SERVICE

Civil Action No. *25CV010819*

Date Filed *August 16, 2025*

Attorney's Address *None*

| | | | |
|---|---|---|---|
| Superior Court | ☑ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, _____Fulton_____ COUNTY

*Reginald Mason*

_____ Plaintiff

VS.

Name and Address of Party to be Served.

*Kiwana Johnston*

*230 John Wesley Dobbs Ave. N.E.*

*Atlanta, GA 30303*

*The Housing Authority of The City of Atlanta, et. al.*

_____ Defendant

_____ Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL** ☐ I have this day served the defendant_____ personally with a copy of the within action and summons.

**NOTORIOUS** I have this day served the defendant_____by leaving a copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of_____described as follows: age, about _____years; weight _____ pounds; height, about_____ feet and_____ inches, domiciled at the residence of defendant.

**CORPORATION** ☑ Served the defendant *The Housing Authority of The City of Atlanta* a corporation by leaving a copy of the within action and summons with *Heather Brown (Deputy General Counsel)* in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant_____ not to be found in the jurisdiction of this court.

This *21st* day of *October*, 20 *25*.

_____ DEPUTY

SHERIFF DOCKET        PAGE

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

Fulton County Superior Court
***EFILED***IF
Date: 10/21/2025 3:35PM
Che Alexander, Clerk

**SHERIFF'S ENTRY OF SERVICE**

## SHERIFF'S ENTRY OF SERVICE

Civil Action No. **25CV010819**

Date Filed **August 6, 2025**

|  |  |  |  |
|---|---|---|---|
| Superior Court | ☒ | Magistrate Court | ☐ |
| State Court | ☐ | Probate Court | ☐ |
| Juvenile Court | ☐ | | |

Georgia, _____ **Fulton** _____ COUNTY

Attorney's Address  **None**

**Reginald Mason**

_____ Plaintiff

Name and Address of Party to be Served.

**Mayra Calhoun**
**230 John Wesley Dobbs Ave. NE**
**Atlanta, GA 30303**

**The Housing Authority of The City of Atlanta, et. al.**

_____ Defendant

_____ Garnishee

### SHERIFF'S ENTRY OF SERVICE

**PERSONAL**
☐ I have this day served the defendant_____ personally with a copy
of the within action and summons.

**NOTORIOUS**
I have this day served the defendant_____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of_____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☑ Served the defendant **The Housing Authority of the City of Atlanta** a corporation
by leaving a copy of the within action and summons with **Heather Jackson Property General**
**Counsel** in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail,
First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed
thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
☐ Diligent search made and defendant_____
not to be found in the jurisdiction of this court.

This **21st** day of **October**, 20 **25**.

_____ **J. Biggers #3445**
DEPUTY

SHERIFF DOCKET _____ PAGE _____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

Fulton County Superior Court
***EFILED***IF
Date: 10/21/2025 3:51 PM
Che Alexander, Clerk

**SHERIFF'S ENTRY OF SERVICE**

SHERIFF'S ENTRY OF SERVICE

Civil Action No. 25CV010819

Date Filed August 6, 2025

Attorney's Address None

|  |  |
|---|---|
| Superior Court ☑ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |

Georgia, _____Fulton_____ COUNTY

Reginald Mason

_____
Plaintiff

vs.

Name and Address of Party to be Served.

Terri M. Lee, President & CEO
230 John Wesley Dobbs AVE NE
Atlanta, GA 30303

The Housing Authority
of The City of Atlanta et al.

_____
Defendant

_____
Garnishee

**SHERIFF'S ENTRY OF SERVICE**

**PERSONAL**
☐ I have this day served the defendant_____ personally with a copy
of the within action and summons.

**NOTORIOUS**
☐ I have this day served the defendant_____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of_____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and_____ inches, domiciled at the residence of
defendant.

**CORPORATION**
☐ Served the defendant _____The Housing Authority of The City_____ a corporation
by leaving a copy of the within action and summons with _Heather Jackrum (Legal Counsel General Counsel)_
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**
☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail,
First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed
thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**
Diligent search made and defendant_____
not to be found in the jurisdiction of this court.

This 21st day of _____October_____, 20 25.

_____
DEPUTY

SHERIFF DOCKET          PAGE          WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT